UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAY ELLIS,<br>Plaintiff,<br>v.<br>CITY OF ANTIOCH, et al.,<br>Defendants. | Case No. 17-cv-05443-RS<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND** |

## I. INTRODUCTION

This dispute arises from an alleged altercation between pro se plaintiff Donald Ray Ellis and employees of Pacific Gas and Electric Company ("PG&E") and the City of Antioch. In February 2018, Ellis filed his First Amended Complaint naming as defendants PG&E, as well as the City of Antioch and several of its employees and councilmembers (collectively, "Antioch Defendants"). PG&E and the Antioch Defendants each filed a motion to dismiss. For the reasons discussed below, both motions to dismiss are granted, with leave to amend. If Ellis wishes to file a new amended complaint, he must do so by December 5, 2018.

## II. BACKGROUND[1]

On January 18, 2017, Ellis went to a PG&E customer service location in Antioch to find out why he had not received his utility bill in the mail. According to Ellis, an unidentified PG&E

---

[1] Facts are drawn from the First Amended Complaint and taken as true as required for the sole purpose of deciding the motions to dismiss.

employee working at the location accused him of "knowing her daughter" and told him he could not "live with her." FAC 2. The employee's statements put Ellis "in fear of [his] life" because he did not know the employee or her daughter. *Id.* 2; *id.* Ex. 1, at 2. At some point during the incident, the police were called. Ellis contends the call to the police was racially motivated. A police officer named Officer Downie arrived at the scene and told Ellis to leave, warning Ellis he would be arrested if he returned to the customer service location. Ellis contends this statement was made "with extreme enforcement" and that "why and how" Offer Downie contacted him was outrageous and cruel. Finally, Ellis states Officer Downie had "advance knowledge" of Ellis's driver's license being stolen from his house, which caused Ellis to fear for his life. *Id.* Ex. 2, at 3.

Ellis seeks relief under 42 U.S.C. § 1983 for several alleged violations of his constitutional rights. In particular, Ellis argues PG&E and the Antioch Defendants violated his rights under the 1st Amendment, 4th Amendment, 7th Amendment, 8th Amendment, 9th Amendment, 14th Amendment, and 15th Amendment. Ellis further argues the Antioch Defendants violated his rights under the 19th Amendment. PG&E and the Antioch Defendants now seek dismissal of the First Amended Complaint.

### III. LEGAL STANDARD

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotation marks omitted). Rule 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is subject to dismissal, in whole or in part, if it lacks a cognizable legal theory or if it does not include sufficient facts to support a plausible claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When evaluating a complaint, the court must accept all material allegations as true and

Order Granting Motions to Dismiss
Case No. 17-cv-05443-RS
2

construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. Legal conclusions, however, need not be accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (citation and internal quotation marks omitted). This is particularly true of pro se litigants, who are generally held to a less stringent pleading standard than are represented parties. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**IV. DISCUSSION**

**A. Lack of Clarity**

Both PG&E and the Antioch Defendants raise concerns about the confusing nature of the First Amended Complaint and seek dismissal for failure to comply with Rule 8. *Iqbal,* 556 U.S. at 684. Under Rule 8, a complaint should contain a "short and plaint statement of the claim" and each allegation should "be simple, concise, and direct." Fed. R. Civ. P. 8. As PG&E notes, convoluted and confusing complaints impose an unfair burden on litigants by creating uncertainty about what claims are at issue and the basis for those claims. *McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996). PG&E argues the First Amended Complaint is confusing and that it is "impossible to discern from [Ellis's] complaint any of the essential details of the events" underlying the lawsuit. PG&E Mot. Dismiss 5 (quoting R&R Re Mot. Dismiss 1). The Antioch Defendants raise similar concerns in their motion to dismiss.

PG&E and the Antioch Defendants are correct. The First Amended Complaint is confusing and does not sufficiently explain the facts that give rise to the suit. For example, Ellis alleges the police were called on him because of racial bias but does not explain why he believes the call was racially motivated. Additionally, Ellis alleges Officer Downie contacted him in a cruel and outrageous manner but does not explain what Officer Downie did that could be subject to that characterization. The First Amended Complaint also makes references to the theft of Ellis's driver's license from his home but does not explain what relationship this theft has to PG&E or the

Antioch Defendants. In short, to sustain a claim, Ellis must explain more clearly what occurred at the PG&E customer service location and what actions he believes were wrongful. While pro se plaintiffs are held to a more lenient pleading standard, the facts that gave rise to a suit nonetheless must be reasonably discernable for the suit to proceed. The motions to dismiss are, therefore, granted.

In addition to the lack of clarity discussed above, PG&E and the Antioch Defendants point to several other fatal flaws in the First Amended Complaint. To sustain a claim, Ellis will need to address the following issues as well.

### B. Failure to State a Claim Against the Antioch Defendants

The Antioch Defendants argue Ellis has not plausibly alleged a violation of any of the constitutional provisions that form the basis of his section 1983 suit. They further argue Ellis failed to state a claim against the City of Antioch or its councilmembers because he does not allege facts tending to show a municipal policy or custom, as required by *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

#### 1. Failure to Show Any Plausible Constitutional Violations

In order to sustain a claim under section 1983, a plaintiff must show a violation of one or more of his constitutional or statutory rights. The First Amended Complaint alleges the Antioch Defendants violated several of Ellis's constitutional rights, however, the complaint does not include sufficient facts plausibly to support these alleged constitutional violations.

*a. First Amendment Claim*

Ellis contends he was engaged in protected speech at the PG&E customer service location and that Officer Downie violated his First Amendment rights by telling him to leave and threatening to arrest him if he returned. While Ellis's right generally to criticize PG&E is protected from government interference, the First Amendment does not necessarily give Ellis a right to continue airing those grievance at the PG&E customer service location after being asked to leave. The First Amendment generally does not protect against private interference with speech. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996). Accordingly, the First

ORDER GRANTING MOTIONS TO DISMISS
CASE NO. 17-cv-05443-RS
4

Amendment does not give a person *carte blanche* to remain on private property in order to speak his mind, despite being asked to leave.

That being said, speech that occurs on private property may be protected if the property owner is functioning like a municipality, or if the property is open to the public. *Marsh v. Alabama*, 326 U.S. 501, 508 (1946). For example, the First Amendment protects a person's right to engage in traditionally protected speech on the street corner or in the shopping district of a privately owned "company town." *Id.* 508-09. In particular, customary First Amendment rights such as picketing on the sidewalk are protected even when exercised on such property. *Lloyd Corp. Ltd. v. Tanner*, 407 U.S. 51 (1972). Ellis has not alleged any facts indicating that the PG&E customer service location, like the sidewalk at issue in *Marsh*, is a public forum that must permit traditional protected speech. Accordingly, Ellis cannot plausibly claim that Officer Downie interfered with any protected activity.

### b. Fourth Amendment Claim

The Fourth Amendment protects all persons from unreasonable search and seizure by the government. A person is "seized" when the police restrain his freedom of movement by "physical force or show of authority." *Brendlin v. California*, 551 U.S. 249, 254-55 (2007). Absent the use of force, the test for whether a person has been seized is whether a reasonable person under the circumstances would feel he was free to leave. *Id.* 255. As the Antioch Defendants point out, Ellis does not allege either his person or any of his belongings were searched. They further argue Officer Downie's warning to Ellis to "stay away" from the PG&E customer service location does not plausibly show Ellis was seized. The Antioch Defendants are correct. None of the facts alleged in the Fist Amended Complaint indicate Ellis was searched or seized during the incident at PG&E's customer service location. Accordingly, Ellis has not plausibly alleged a violation of his Fourth Amendment rights.

### c. Seventh Amendment Claim

The Seventh Amendment provides a right to trial by jury for suits at common law. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). The First Amended Complaint,

however, makes not reference to Ellis being denied this right. It is also unclear how denial of Ellis's right to a jury trial would give rise to liability against PG&E or the Antioch Defendants. The reference to the Seventh Amendment is best interpreted as a demand for a jury trial rather than as a theory for relief and will construed accordingly.

### d. Eighth Amendment Claim

The Eight Amendment, applicable to the states through the Fourteenth Amendment, prohibits the imposition of cruel and unusual punishment, including punishment that is grossly disproportionate to the severity of the crime. *Gregg v. Georgia*, 428 U.S. 153, 168, 173 (1976). The First Amended Complaint, however, does not allege Ellis has been subject to punishment for any crime. While Officer Downie allegedly threatened Ellis with arrest should he return to the PG&E customer service location, this warning does not qualify as punishment for a crime. Accordingly, the First Amended Complaint fails to state a claim under the Eighth Amendment.

### e. Ninth Amendment Claim

The Ninth Amendment states the "enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. This amendment protects certain "peripheral rights" that, while not explicitly mentioned in the Bill of Rights, fall within the penumbra of those enumerated rights. *Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). In particular, the Ninth Amendment has been interpreted to protect a right to privacy emanating from the Bill of Rights. *Id.* The First Amended Complaint does not appear to bear any connection to the Ninth Amendment or the right to privacy. Accordingly, the complaint fails to state a claim under this amendment.

### f. Fourteenth Amendment Claim

Ellis asserts the Antioch Defendants violated his rights under both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. The Due Process clause prohibits states from depriving any person of life, liberty or property without due process of law. To establish a substantive due process violation based on police conduct, a plaintiff must show law enforcement behaved in a manner "so brutal and so offensive to human dignity" that it "shocks the conscience." *Chavez v. Martinez*, 538 U.S. 760, 774 (2003); *see also Graham v. Connor*, 490 U.S.

386, 393 (1989). As described in the complaint, Officer Downie warning Ellis to stay away from the PG&E location or face arrest falls well short of this standard. Therefore, the First Amended Complaint does not plausibly allege a violation of the due process clause.

The equal protection inquiry is slightly more complicated. The first step in an equal protection inquiry is determining the level of scrutiny applicable to the alleged government conduct. Strict scrutiny applies where the government has relied upon a suspect classification, such as race or national origin. *Clark v. Jeter*, 486 U.S. 1910, 1914 (1988). Government action that discriminates based on sex generally receives intermediate scrutiny and all other government conduct receives rational basis review. *Id.*

Ellis alleges the police were called on him because of his race, however, he does not provide any facts to support this conclusion. Instead he describes an altercation over Ellis's alleged relationship with a PG&E employee's daughter, whom Ellis vigorously denies knowing. Even if the call to the police was racially motivated, there is no indication the call was made by the Antioch Defendants.[2] Accordingly, Ellis has not plausibly alleged a racially discriminatory government action giving rise to strict scrutiny.

Because Ellis does not plausibly allege discrimination based on a suspect classification, his claim is evaluated under rational basis review. Under that standard, a government action violates the equal protection clause only if the action does not bear a rational relationship to any legitimate government interest. *Id.* Here, Officer Downie telling Ellis to leave the site of the altercation could arise from any number of legitimate government interests, including diffusing an altercation between Ellis and a PG&E employee. Therefore, Ellis has not plausibly alleged the Antioch Defendants engaged in conduct that violates the equal protection clause.

### g. *Fifteenth and Nineteenth Amendment Claims*

The Fifteenth and Nineteenth Amendments prohibit interference with the right to vote on

---

[2] The First Amended Complaint does not specify who called the police, however, the context of the altercation suggests it was a PG&E employee or possibly another customer. There is no indication any Antioch employees were present at the time of the call.

the basis of race and gender respectively. U.S. Const. amends. XV, XIX. The First Amended Complaint, however, makes no mention of Ellis attempting to vote or being prevented from voting in any way. Accordingly, Ellis has not stated a claim for relief under either the Fifteenth or Nineteenth Amendments.

### 2. *Monell* Liability Against the City of Antioch and Its Councilmembers

To state a claim against a municipality under section 1983, a plaintiff must show the alleged unconstitutional conduct was executed pursuant to the municipality's policy or custom. *Monell*, 436 U.S. at 694-95. One way to establish an official policy or custom is by showing an "official with final policy-making authority" ratified the unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1253-54 (9th Cir. 2010) *overruled on other grounds by Castro v. County of L.A.*, 833 F.3d 1060 (9th Cir. 2016).

The Antioch Defendants argue the First Amended Complaint fails to state a claim against the City of Antioch and its councilmembers because there are no facts tending to show an official policy or custom. While the First Amended Complaint alleges at least one Antioch city councilmember ratified the conduct in this suit, it does not explain what conduct was ratified or how the councilmember did so. Simply stating that a city councilmember ratified a violation of Ellis's constitutional rights is not enough. Rather, to maintain a claim against the City of Antioch, Ellis must state both (1) what wrongful conduct the councilmember ratified, and (2) what the councilmember said or did to ratify that conduct.

A second way to establish a municipal "policy" is by showing the municipality failed adequately to train or supervise its police officers, resulting in the violation of the plaintiff's rights. *Clouthier*, 591 F.3d at 1249. The failure to train or supervise must amount to deliberate indifference to the rights of persons with whom the police are likely to have contact. *Cty. of Canton v. Harris*, 489 U.S. 378, 388 (1989). This is a stringent test. The plaintiff must show the municipality ignored a known or obvious risk that failing to supervise or train would result in a violation of somebody's rights. *Harris*, 489 U.S. at 390;

Ellis alleges at least one member of the Antioch city council failed adequately to supervise

and that the alleged wrongful actions in this suit were the regular practice of the Antioch police. Ellis, however, does not point to any prior conduct that would have put the City of Antioch on notice of a need for additional training or supervision. Furthermore, the only police action alleged in the First Amended Complaint is that Officer Downie told Ellis to leave the PG&E customer service location and told him he would be arrested if he returned. This incident does not plausibly show there was an obvious need for additional training or supervision at the time of the incident.

In short, the First Amended Complaint fails to identify an official policy or custom, either under a ratification theory or under a failure to supervise theory. Accordingly, the First Amended Complaint does not state a claim against the City of Antioch.

### C. Failure to State a Claim Against PG&E

PG&E argues the claims against it should be dismissed under Rule 12(b)(6) because PG&E did not act "under color of state law" as required for a claim under section 1983. *See* 42 U.S.C. § 1983; *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). PG&E contends this requirement is analogous to the "state action" requirement of the Fourteenth Amendment. *Brentwood Acad. v. Tenn. Secondary Sch. Athletics Ass'n*, 531 U.S. 288, 295 n.2 (2001). Accordingly, PG&E asserts, purely private conduct generally does not satisfy this "under color of state law" requirement. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). While joint action by private and public actors may satisfy this requirement, a conclusory assertion of joint conduct cannot overcome a motion to dismiss. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008).

PG&E argues it cannot be held liable under section 1983 because it is a private company, not a government actor. Furthermore, PG&E asserts, simply calling the police does not mean a party is acting under color of state law. *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989); *Peng v. Mei chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003). PG&E is correct. Ellis has not alleged sufficient facts to show PG&E's employees were acting under color of state law. Therefore, PG&E's motion to dismiss must be granted.

## V. CONCLUSION

For the reasons discussed above, the motions to dismiss the claims against PG&E and the Antioch Defendants are granted, with leave to amend. Should Ellis choose to file a new amended complaint, he must do so by December 5, 2018.

**IT IS SO ORDERED**.

Dated: 10/25/18

_____
RICHARD SEEBORG
United States District Judge